## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JODY M. OSTER,                          :
                                        :
         Plaintiff,                     :          Case No. 2:15-cv-2746
                                        :
    v.                                  :          JUDGE ALGENON L. MABRLEY
                                        :
HUNTINGTON BANCSHARES INC., *et al.*,   :          Magistrate Judge Kemp
                                        :
         Defendants.                    :

### OPINION & ORDER

This is an employment-discrimination case in which Jody Oster, a long-standing in-house attorney with Huntington Bancshares Inc. ("Huntington" or "the Bank"), alleges that she was terminated due to gender discrimination and retaliation for complaining about her then-supervisor, Thomas Eck.  Oster filed suit in August, 2015, alleging the following causes of action:

   (1) Gender discrimination, in violation of Title VII and Ohio law (Counts I and II);

   (2) Retaliation, in violation of Title VII and Ohio law (Counts III and IV); and

   (3) Aiding and abetting a discriminatory act, in violation of Ohio law (Count V).[1]

These claims, as well as Huntington's after-acquired evidence defense,[2] will be tried before a jury beginning on August 8, 2017.

This matter is before the Court on the following motions: (a) Defendants' motion for bifurcation of evidence related to punitive damages at trial (Doc. 121); (b) Defendants'       brief addressing various evidentiary issues, including motions in limine (Doc. 120); (c) Plaintiff's

---

[1] Oster named four defendants: Huntington Bancshares Inc., The Huntington National Bank, and individual defendants Thomas Eck and Richard Cheap.  Counts I-IV apply to all four named defendants. (Doc. 1).  Count V applies only to individual defendants Eck and Cheap.  (*Id.*).
[2] A more fulsome recitation of the parties' allegations is contained in this Court's Opinion & Order on the parties' Motions for Summary Judgment.  (Doc. 109.)

motion in limine (Doc. 123); and (d) Plaintiff's motion to exclude previously undisclosed witnesses from trial (Doc. 122).

## I. MOTION FOR BIFURCATION OF EVIDENCE RELATED TO PUNITIVE DAMAGES

Defendants seek bifurcation of evidence related to punitive damages pursuant to Ohio Revised Code ("ORC") Section 2315.21(B) and Federal Rule of Civil Procedure ("FRCP") 42(b). (Doc. 121.) Plaintiff opposes, arguing that the Court is bound by the procedural rule found in FRCP 42(b) rather than the state rule found in Section 2315.21(B), and that bifurcation is not warranted under FRCP 42(b). (Doc. 135.) In the alternative, Plaintiff requests that the Court bifurcate only the *amount* of punitive damages, not Plaintiff's entitlement thereto. (*Id.* at 7.)

ORC Section 2315.21(B) and FRCP 42(b) provide different standards for bifurcation. Under ORC Section 2315.21(B), upon the request of a party, an Ohio court will bifurcate punitive damages and compensatory damages claims.[3] Ohio Rev. Code § 2315.21(B)(1). FRCP 42(b), in contrast, provides a standard: "[f]or convenience, to avoid prejudice, or to expedite and

---

[3] The relevant portion of Section 2315.21(B) is as follows: (B)(1) In a tort action that is tried to a jury and in which a plaintiff makes a claim for compensatory damages and a claim for punitive or exemplary damages, upon the motion of any party, the trial of the tort action shall be bifurcated as follows:

> (a) The initial stage of the trial shall relate only to the presentation of evidence, and a determination by the jury, with respect to whether the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant. During this stage, no party to the tort action shall present, and the court shall not permit a party to present, evidence that relates solely to the issue of whether the plaintiff is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.

> (b) If the jury determines in the initial stage of the trial that the plaintiff is entitled to recover compensatory damages for the injury or loss to person or property from the defendant, evidence may be presented in the second stage of the trial, and a determination by that jury shall be made, with respect to whether the plaintiff additionally is entitled to recover punitive or exemplary damages for the injury or loss to person or property from the defendant.

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In this Court, "[g]enerally, state substantive law and federal procedural law apply to state claims." *Range v. Douglas*, 763 F.3d 573, 580 (6th Cir. 2014). So a threshold question is whether ORC Section 2315.21 is "substantive" or "procedural."

The Ohio Supreme Court has found this rule to be "substantive" because it granted parties a mandatory right to bifurcate the punitive damages portion of a tort trial from the compensatory portion. *Havel v. Villa St. Joseph*, 963 N.E.2d 1270 (Ohio 2012). Although Defendants concede that this Court is not bound by the Ohio Supreme Court's pronouncements on the "substantive" nature of Ohio statutes, (Doc. 121 at 3), they seek refuge in two of this Court's older cases: *Geiger v. Pfizer, Inc.*, No. 2:06-CV-636, 2009 U.S. Dist. LEXIS 34982 (S.D. Ohio Apr. 15, 2009) and *Great W. Cas. Co. v. Flandrich*, No. C2-07-CV-1002, 2010 U.S. Dist. LEXIS 47143 (S.D. Ohio Apr. 2, 2010). In each, the Court applied ORC Section 2315.21(B) without reference or comparison to FRCP 42(b). *Geiger*, 2009 U.S. Dist. LEXIS 34982, at *3; *Great W. Cas. Co.*, 2010 U.S. Dist. LEXIS 47143, at *3. When the Court later faced the question whether ORC Section 2315.21(B) trumps FRCP 42(b), it recognized that "the case law is not uniform that this particular statute should be applied to cases pending in the United States courts because it may be a procedural rather than a substantive requirement." *Pollock v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-CV-581, 2012 U.S. Dist. LEXIS 80953, at *2 (S.D. Ohio June 12, 2012). The Court then applied FRCP 42(b). *Id.*

Indeed, the case law in this district has shifted toward applying FRCP 42(b) rather than the state statute on bifurcation, because "[a] state's characterization of its own rule as 'substantive' instead of 'procedural' must 'yield to the strong presumptive validity of the

properly promulgated federal procedural rule, which will be upheld as controlling the procedure in the federal court." *Patel Family Trust v. AMCO Ins. Co.*, No. 11-cv-1003, 2012 WL 2883726, at *2 (S.D. Ohio July 13, 2012) (holding that FRCP 42(b) governs the issue of bifurcation in federal court despite the existence of ORC Section 2315.21(B)). *See also Pryor v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-312, 2017 WL 354228, at *4 (S.D. Ohio Jan. 23, 2017) ("This Court agrees with the holdings in this line of cases, including *Patel Family Trust*, and finds that Fed.R.Civ.P. 42 governs the [bifurcation] procedures in this federal court."); *Piskura v. Taser Intern., Inc.*, No. 1:10–cv–248, 2013 WL 3270358, at *2 (S.D. Ohio June 26, 2013) ("because bifurcation is a procedural, and not substantive, matter, it is Rule 42 alone that controls this Court's decision making process with regards to whether bifurcation is appropriate."). Therefore, this Court joins its brethren in explicitly holding bifurcation to be a procedural matter that falls under FRCP 42(b).

Per FRCP 42(b), the Court has the discretion to bifurcate this trial "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). *See also Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (the decision whether to bifurcate a trial is reviewed for abuse of discretion). Bifurcation is reserved for exceptional cases. *Bennett v. Board of Educ. of Washington Cnty Joint Vocational School Dist.*, No. 08–CV–0663, 2011 WL 4753414, at *6 (S.D. Ohio Oct. 7, 2011) ("'federal courts have long adhered to the rule that bifurcation should be ordered only in exceptional cases because the piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.'")

Defendants argue that the punitive damages issue should be bifurcated because: (a) evidence related to the individual defendants' "highly-sensitive" financial condition "will potentially prejudice or confuse a jury on issues related to liability and compensatory damages"

(Doc. 121 at 3, 4); (b) bifurcation favors judicial economy if the jury finds in favor of the defendant because evidence of punitive damages then would not need to be presented (*id.* at 7); and (c) "few cases merit the award of punitive damages." (*Id.*)

As Plaintiff points out, the *only* evidence Defendant identifies as requiring bifurcation is evidence related to the individual Defendants' financial condition. (Doc. 135 at 4.) Therefore, little in the way of judicial economy or convenience would be served by bifurcating punitive from compensatory damages. As to prejudice, Defendants cite nonbinding cases from other districts and circuits, as well as a Southern District of Ohio opinion from a judge who bifurcates the question of punitive damages "in every case in which the plaintiff seeks to introduce evidence of the defendant's financial condition in order to support an award of punitive damages." *Hughes v. Goodrich Corp.*, No. 3:08cv263, 2010 U.S. Dist. LEXIS 98661, at *11 (S.D. Ohio Sep. 20, 2010). Defendants cite no special prejudice to the individual defendants by the revelation of their personal financial information. Because bifurcation would not be convenient or expeditious, and it would not avoid any special prejudice to Defendants such that this presents an exceptional case, the Court **DENIES** Defendants' motion to bifurcate.

## II.    MOTIONS IN LIMINE

### A.    Standard of Review

Motions in limine allow the Court to rule on the admissibility of evidence in advance of trial in order to expedite proceedings and give the parties advance notice of the evidence upon which they may not rely to prove their case. *Bennett*, 2011 WL 4753414, at *1 (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997)). To prevail on a motion in limine, the moving party must show that the evidence is clearly inadmissible. *Id.* If the movant fails to meet this high standard, a Court should defer evidentiary rulings so that the issues may be resolved in the context of a trial. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D.

Ohio 2004). Whether or not to grant a motion in limine is within the discretion of a trial court. *Delay v. Rosenthal Collins Group, LLC*, 2:07-cv-568, 2012 WL 5878873, *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012)). However, the Court may change its ruling on a motion in limine for whatever reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## B. ANALYSIS

Plaintiff moves to exclude: (1) testimony from Annette Houck concerning statements made by other Huntington Bank employees about Plaintiff; (2) Defendants' use of certain of Stephanie Wilder's notes; (3) Defendants' use and reference to Plaintiff's April 8, 2015 settlement letter; (4) argument that Plaintiff's audio recording of her March 4, 2015 termination can be a basis for Defendants' after-acquired evidence defense; (5) evidence concerning Defendants' hiring and promotion of female lawyers after Plaintiff's termination; and (6) testimony that Plaintiff acted "unethically." (Doc. 123 at 1.)

Defendant moves to: (1) admit evidence of Defendants' severance offer to Plaintiff; (2) admit evidence contained in Plaintiff's April 8, 2015 settlement letter; and (3) exclude evidence related to Defendant Eck's father. (Doc. 120 at 1.)

The Court will analyze the motions in limine on an issue-by-issue basis. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the pending motions in limine.

### 1. Plaintiff's Motion to Exclude Certain Testimony of Annette Houck

Plaintiff seeks to exclude evidence that other employees complained to Annette Houck about Plaintiff on the grounds that this testimony would be impermissible hearsay. (Doc. 123 at 1.) Defendants argue that this evidence is not hearsay, because it goes not to the truth of the matter asserted but rather to the bank's alleged non-discriminatory motive for terminating Oster.

6

Under Federal Rule of Evidence 802, "[h]earsay is not admissible unless any of the following provides otherwise: a federal statute; these rules [of evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.  Hearsay is a statement made by a declarant outside the current trial or hearing that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1) & (2).  Evidence that is *not* offered to prove the truth of the matter asserted is not hearsay. *Blair v. Henry Filters*, 505 F.3d 517, 524 (6th Cir. 2007) ("By definition, only out-of-court statements offered to prove the truth of the matter asserted are hearsay.").

As the Court stated in its opinion on Plaintiff's motion to strike the same or similar statements of Ms. Houck made in support of Defendants' motion for summary judgment, statements made to a person "who did not independently have the authority . . . to fire the plaintiff, but who nevertheless played a meaningful role in the [employment] decision" are relevant to the bank's motive and not hearsay. *See, e.g., Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998) (emphasis added) (collecting cases).  At the summary judgment stage, the Court declined to consider the same or similar complaints made to Ms. Houck, because:

> The challenged paragraph from Houck's affidavit, however—involving paralegal Susan Wangler's statement that she transferred due to Oster's mistreatment—does not pass muster, even under the relaxed standard from *Ercegovich*.  There simply is no reason (at this stage) to believe that Houck played a meaningful role in the decision to terminate Oster's employment.  Accordingly, the Court will not consider paragraph seven from Houck's affidavit in evaluating the Bank's motion for summary judgment.

(Doc. 109 at 17.)  Defendants now contend that they have evidence, which they did not present in their motion to strike, that Houck played a meaningful role in the decision to terminate Oster's employment.  (Doc. 138 at 2-3.)  In particular, Defendants contend that they

7

> will show that Ms. Houck relayed the concerns voiced by Plaintiff's co-workers to Ms. Wilder, as well as to Defendants Cheap and Eck, who were each involved in the termination decision. It stands to reason – and the evidence will show – that Ms. Wilder and Messrs. Eck and Cheap would rely on these statements from Ms. Houck, who reported directly to Defendant Cheap and was at the same level in the Legal Department as Defendant Eck, to inform their decision to terminate Plaintiff.

(*Id.* at 3.)

Defendants contend that *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 817 (6th Cir. 2007) supports the admissibility of the complaints made to Ms. Houck. (Doc. 138 at 3-4.) But *Maday* presents a different factual scenario. In *Maday*, the plaintiff sued her former employer, the Public Libraries of Saginaw, for terminating her in violation of Title VII, state law, and the Family and Medical Leave Act. *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 817 (6th Cir. 2007). Prior to the plaintiff's termination, the library director had disciplined her. *Id.* at 816. At trial, the district court admitted evidence of complaints made to the library director, which played a role in the discipline (but not necessarily the termination). *Id.* at 819. The district court admitted this evidence, and the Sixth Circuit affirmed, because these complaints were "not being offered for their truth;" rather, they were "to show the reason why the employer took the action it did in accordance with its progressive discipline policy which means something had to happen earlier." *Id.* at 820.

The third-party complaints in *Maday* went to show the reason for Maday's *discipline*. *Id.* And the declarant in *Maday* was the actor who meted out that discipline. *Id.* at 819. Thus, the evidence in *Maday* would be non-hearsay under *Bush v. Dictaphone Corp.*, 161 F.3d 363, 366 (6th Cir. 1998) ("Each declaration stated that the declarant, *a corporate decision-maker*, had been told by unidentified co-workers that Bush was abusive or unstable.") (emphasis added). Here, Ms. Houck's evidence is proffered in support of Plaintiff's *termination*. (Doc. 138 at 3.) And Ms. Houck is not a corporate decision-maker in the decision to terminate Plaintiff. (*Id.*)

8

On the other hand, if the complaints made to Ms. Houck played a meaningful role in Plaintiff's termination (*i.e.*, Ms. Houck relayed these complaints to the decision-makers, *and* the decision-makers relied on these complaints in making the decision to terminate Plaintiff), they *may* be relevant under *Ercegovich*. 154 F.3d at 355. While Defendants suggest that this is the case, they have not shown as much in evidence. Therefore, the Court **HOLDS IN ABEYANCE** this motion in limine until the record is more fully developed.

### 2. *Plaintiff's Motion to Exclude Stephanie Wilder's Notes*

Plaintiff also seeks to exclude from evidence Human Resource Representative Stephanie Wilder's: "(1) typewritten notes allegedly prepared during an exit interview with attorney Becky Spainhoward, and (2) those prepared while Ms. Wilder conducted the 'stay interviews' that Defendant Cheap asked Human Resources to conduct in 2014." (Doc. 123 at 2.) The Court also addressed this issue in its summary judgment order, finding these notes to contain inadmissible hearsay, and *not* to fall within the business records exception, at least for the purposes of summary judgment. (Doc. 109 at 17-20.) Plaintiffs seek to exclude this evidence at trial for the same reasons the Court gave in its summary judgment order. (Doc. 123 at 2.)

Defendants argue that "the Court should deny Plaintiff's request that Defendants be precluded from – at trial – laying an adequate foundation for the admissibility of these notes" as business records. (Doc. 138 at 4.) The business records exception is fairly straightforward, however,[4] and Defendants specifically addressed it in their opposition to Plaintiff's motion to

---

[4] The business records exception to the prohibition on hearsay, found in Federal Rule of Evidence 803(6), allows for admission of records of a regularly conducted activity, if:

>    (A) the record was made at or near the time by--or from information transmitted by-- someone with knowledge;

>    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

strike this very evidence. (Doc. 95 at 3-7.) Defendants have failed to point to anything that would change the calculus. Therefore, at this juncture, the Court **GRANTS** Plaintiff's motion to exclude this evidence from trial. The Court may revisit this ruling at trial in the event that Defendants come forth with the proper foundation for the business records exception.

### 3. Defendants' Motion to Admit Portions of, and Plaintiff's Motion to Exclude, Plaintiff's April 8, 2015 Settlement Letter

On April 8, 2015, before the complaint was filed in this case but after Plaintiff's termination and Defendants' severance offer, Plaintiff's counsel sent a letter to defense counsel. This letter rejected Defendants' severance offer, laid out Plaintiff's employment discrimination and retaliation claims, and proposed a counteroffer to resolve the dispute. (Doc. 123-1.)

Plaintiff seeks to exclude all portions of the letter as confidential settlement communications. (Doc. 123 at 3-4.) Defendants agree that the letter is "settlement-related," (Doc. 138 at 5), but nonetheless seek to admit evidence contained in the letter that Oster intended to retire at age fifty-five (55) to "rebut[] Plaintiff's statements concerning her retirement plans and demonstrate[] the amount of damages the Plaintiff sustained." (Doc. 120 at 3-6.)

Settlement communications are governed by Federal Rule of Evidence 408. Pursuant to Rule 408, no party may admit, "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," the following:

---

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). *See also Redken Labs., Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir. 1988).

(1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim[.]

Fed. R. Evid. 408(a). In short, offers to settle and statements made during compromise negotiations are not admissible into evidence, either to prove a claim, the amount of the claim, or for impeachment. If the evidence is offered for another purpose, "such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," the Court may admit it. Fed. R. Evid. 408(b).

The purposes of Rule 408 are threefold:

First, the rule promotes the 'resolution of disputes short of litigation, thereby conserving scarce judicial resources. The rule recognizes that settlements are more likely to result when parties are free to speak openly during settlement negotiations, without fear that what is said can be used against them at trial.' *Korn, Womack, Stern & Assocs. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263, at *6 (6th Cir. June 15, 1994). Second, the rule seeks to exclude irrelevant evidence, recognizing that "disputes are often settled for reasons having nothing to do with the merits of a claim." *Ibid.* Third, the rule attempts to exclude unreliable evidence, as settlement negotiations "are typically punctuated with numerous instances of puffing and posturing," and "[w]hat is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise contend to be wholly true." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir.2003) (quoting *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 554 (E.D.Cal.1990)).

*Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 444 (6th Cir. 2010).

Defendants' stated justifications for admitting the statement in Oster's settlement communication run afoul of Rule 408. First, offering it as "rebuttal evidence" expressly contradicts Rule 408's prohibition on admitting settlement discussions "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Defendants seek to admit the statement to contradict Plaintiff's, and her expert's, expected contrary statements that she intended to retire later than age fifty-five (55).

Rule 408 did not always prohibit the use of settlement communications for the purpose of impeachment—this addition to the rule was made in 2006. The advisory notes accompanying the 2006 amendment to Rule 408 provide that "broad impeachment [by prior inconsistent statement or through contradiction] would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements." Fed. R. Evid. 408. *See also Eid*, 377 F. App'x at 444. Although Defendants use the word "rebuttal" rather than "impeachment" to describe their intended purpose, the line between rebuttal evidence and impeachment evidence here is razor-thin. The Court finds that the purposes of the impeachment prohibition in Rule 408 would be thwarted if it allowed Defendants to use factual admissions in a settlement communication to "rebut" Plaintiff's or her expert's contrary assertion. *See also Eid*, 377 F. App'x at 445 (affirming district court's exclusion of factual admissions contained in a settlement letter meant to impeach Plaintiff); *Hammer v. Residential Credit Solutions, Inc.*, No. 13 C 6397, 2015 WL 7776807, at \*28 (N.D. Ill. Dec. 3, 2015) (impeachment prohibition in Rule 408 barred evidence offered to rebut Plaintiff's argument that Defendant "was trying to 'take Hammer's house.'").

Second, offering the letter to demonstrate Defendants' calculation of Plaintiff's damages runs afoul of Rule 408's prohibition on admitting compromise negotiations "to prove or disprove the . . . *amount* of a disputed claim." Fed. R. Evid. 408(a) (emphasis added). As a general matter, the Sixth Circuit has held that Rule 408 "exclude[es] factual admissions made in the course of settlement negotiations." *Eid*, 377 F. App'x at 445. *See also Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 798 (6th Cir. 2007) ("Because disproving mitigation cannot both be a purpose for excluding evidence under Rule 408—*i.e.,* for 'the amount' of the claim—

12

and at the same time be admissible as 'another purpose,' Dr. Stockman's position is implausible.")

Plaintiff's motion in limine to exclude her April 8, 2015 settlement letter is **GRANTED** and Defendant's motion in limine to admit portions thereof is **DENIED**.

### 4. *Plaintiff's Motion to Exclude Audio Recording as Basis for After-Acquired Evidence Defense*

Plaintiff seeks exclusion of any argument that her recording of her March 4, 2015 termination is a basis for Defendants' after-acquired evidence defense. (Doc. 123 at 4-6.) Defendants affirm that they do not intend to offer this audio recording as after-acquired evidence. (Doc. 138 at 12.) This motion in limine is therefore **MOOT**.

### 5. *Plaintiff's Motion to Exclude Evidence Regarding the Hiring and Promotion of Female Lawyers After Plaintiff's Termination*

Plaintiff seeks to exclude evidence related to the hiring or promotion of female attorneys after Plaintiff's termination, including organizational charts of Huntington's legal department *after* Plaintiff was terminated. Plaintiff contends that this evidence is irrelevant and would likely confuse or mislead the jury. (Doc. 123 at 7; citing Fed. R. Evid. 401, 402, 403.) Defendants respond that they "do not 'intend to present evidence that Defendants have promoted and hired multiple female attorneys since they fired Plaintiff[.]'" (Doc. 138 at 12.) Rather, Defendants intend to "offer evidence that Huntington hired Ms. Jennifer Mountcastle to replace Plaintiff and that Ms. Mountcastle performs most of Plaintiff's prior duties." (*Id.*)

Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that

evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice." Fed. R. Evid. 403.

Evidence that Huntington hired a female to replace Plaintiff is, indeed, relevant and admissible. *See, e.g., Jackson v. Richards Medical Co.*, 961 F.2d 575, 587 (6th Cir. 1992) ("We note in particular that the defendant hired another black woman shortly after notifying Ms. Jackson of her impending layoff. This fact strongly discredits the plaintiff's Title VII claim."). On the other hand, organizational charts of Huntington's legal department *after* Plaintiff's termination would not, as Defendants posit, "help the trier of fact understand the issues in the case and Plaintiff's role at Huntington leading up to her termination." (*See* Doc. 138 at 13.) Huntington seeks to have the jury "understand the chain-of-command in Huntington's legal department and where Plaintiff's position fit into Huntington's legal department." (*Id.*) It can do so with organizational charts depicting the state of personnel during Plaintiff's tenure. Later charts, with the names of parties who did not work with Plaintiff and did not replace her, are not relevant to show Plaintiff's position within Huntington's legal department. In fact, evidence that Huntington later hired females in *other* roles in the legal department may confuse a jury charged with deciding whether Huntington discriminated against Plaintiff for her sex. *See* Fed. R. Evid. 403. Therefore, the Court **DENIES** Plaintiff's motion to the extent it seeks to exclude evidence that Defendant replaced Plaintiff with a female employee, but **GRANTS** it to the extent it seeks to exclude evidence that Defendant hired females unrelated to Plaintiff to work in the legal department.

### 6. *Plaintiff's Motion to Exclude Testimony that Plaintiff Acted "Unethically"*

Plaintiff seeks to exclude evidence that her conduct, including her surreptitious audio recording of the March 4, 2015 meeting in which she was informed of her termination, violated the Ohio Rules of Professional Conduct. (Doc. 123 at 8.) She claims this evidence would be

14

highly prejudicial to her, especially in light of the fact that the Court precluded her from identifying an expert to testify that her conduct was *not* an ethical violation because Defendants represented that they would not present any evidence to the contrary. (*Id.* at 8-9.)

Defendants respond that they "will *not* offer evidence or argument that Plaintiff violated the Ohio Rules of Professional Conduct." (Doc. 138 at 14.) Because Defendants will not attempt to introduce evidence that Plaintiff violated the Ohio Rules of Professional Conduct, this portion of Plaintiff's motion in limine is **MOOT**.

On the other hand, Defendants seek to describe Plaintiff's conduct as "unethical." (*Id.*) The word "unethical," however, is a term of art in the legal field that, for lawyers, carries with it implications of attorney disbarment and disciplinary proceedings in accordance with the Ohio Rules of Professional Conduct. To illustrate, Black's Law Dictionary defines "unethical" as "[n]ot in conformity with moral norms or standards of professional conduct. **See** LEGAL ETHICS." Black's Law Dictionary, Seventh Edition, at 1529 (1999) (emphasis added). "Legal Ethics," in turn, is defined as: "1. The standards of minimally acceptable conduct within the legal profession, involving the duties that its members owe one another, their clients, and the courts. . . . 2. The study or observance of those duties. 3. The written regulations governing those duties. **See** MODEL RULES OF PROFESSIONAL CONDUCT." *Id.* at 904 (emphasis added). Therefore, even without reference to the Ohio Rules of Professional Conduct, Oster cannot escape the baggage associated with the term "unethical" as applied to lawyers. Because Oster's acting in conformance with the Ohio Rules of Professional Conduct is not at issue in this case, references to her "unethical" behavior may confuse the jury and unfairly prejudice Oster. Fed. R. Evid.

403. Therefore, the Court **GRANTS** Plaintiff's motion in limine to exclude evidence that Oster acted "unethically."[5]

### 7. *Defendants' Motion to Admit their Severance Offer to Plaintiff*

Defendants seek to admit Plaintiff's severance offer, and Plaintiff does not object to its admissibility. (Doc. 136 at 1.) Therefore, the Court will **GRANT** Defendants' motion in limine to admit it.

### 8. *Defendants' Motion to Exclude Evidence regarding Defendant Eck's Father*

Defendants seek to exclude evidence that Mr. Eck's father was convicted of participating in a scheme to defraud business investors in 1999. (Doc. 120 at 6.) Defendant Eck took over his father's law practice at one point, but never represented his father in any criminal proceedings. (*Id.*) Any of this evidence, Defendants argue, would be highly prejudicial to Defendant Eck under Federal Rule of Evidence 403. (*Id.*)

Plaintiff argues that Defendant Eck's employment and work history as an attorney, particularly misrepresentations thereof, are relevant to Defendant Eck's credibility and character under Federal Rules of Evidence 607 and 608. (*Id.*) For example, Defendant Eck testified in his deposition that he never worked for his father. Public records indicate, however, that he was counsel of record for his father in disciplinary proceedings in the California Supreme Court. (*Id.*) In addition, Plaintiff asserts that Defendant Eck improperly engaged in private practice— including representing his father's business interests—while employed at the United States Office of the Comptroller of the Currency. (*Id.*) Plaintiff argues that this type of evidence may necessarily touch on his father's criminal history and scheme to defraud investors.

---

[5] This ruling does not prevent Defendants from commenting on Oster's behavior. Referring to her behavior as "inappropriate" (for example) does not carry the same baggage or risk of confusing the jury.

Parties may impeach witnesses under Federal Rule of Evidence 607. Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."). Evidence regarding a witness's character for truthfulness or untruthfulness is governed by Federal Rule of Evidence 608,[6] although the parties' dispute does not really involve Rule 608.

The misrepresentations/inconsistencies cited by Plaintiff are indeed relevant impeachment evidence of Defendant Eck under the Federal Rules of Evidence. Therefore, the Court declines to grant a blanket motion in limine precluding Plaintiff from offering evidence about Defendant Eck's representation of his father or the business interests of his father. These misrepresentations/inconsistencies, however, do not require disclosure of Defendant Eck's father's criminal conduct. The Court agrees that evidence of his father's criminal conduct is not relevant, and is prejudicial to Defendant Eck. Therefore, the Court **GRANTS** Defendants' motion in limine to the extent that it relates to the criminal conduct of Defendant Eck's father.

### III.     PLAINTIFF'S MOTION TO EXCLUDE PREVIOUSLY UNDISCLOSED WITNESSES FROM TRIAL

Plaintiff seeks to exclude, pursuant to Federal Rule of Civil Procedure 37(c)(1), the following defense witnesses, who were disclosed on Defendants' witness list but not in their initial disclosures or their responses to interrogatories: Larissa Osborn, Deborah Siciliano,

---

[6] Under Federal Rule of Evidence 608:

> (a) A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

> (b) Specific Instances of Conduct. . . . extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

> > (1) the witness; or

> > (2) another witness whose character the witness being cross-examined has testified about.

Rachel Mulchaey, Becky Spainhoward, Susan Wangler, Dana Farthing, Jason Gardner, and Tiffany Scurti-Swain. (Doc. 122.)[7] Plaintiff argues that Defendants' failure to include these witnesses in their initial disclosures, responses to interrogatories, or supplements thereof would prejudice her at trial, because allowing Defendants to call these witnesses would be akin to a "trial by ambush." (*Id.* at 1.)

Under Rule 37(c)(1), "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless[.]" Fed. R. Civ. P. 37(c)(1). Rule 26(a) governs initial disclosures and Rule 26(e) concerns the duty to supplement these initial disclosures and other discovery responses. Fed. R. Civ. P. 26(a) & (e). Under Rule 26(a), a party must disclose, among other things, "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information-- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). A party must supplement these initial disclosures, as well as responses to interrogatories and other discovery, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) requires absolute compliance with Rule 26(a) and (e), unless Defendants show "that the failure to comply was substantially justified or harmless." *Production Design Servs., Inc. v. Sutherland-Schultz, Ltd.*, 2015 WL 4945745, at *4 (S.D. Ohio Aug. 20, 2015)

---

[7] Plaintiff also seeks to exclude Tasis McIntyre and Sean Rohrenbeck, (Doc. 122), who Defendants no longer seek to call as witnesses. (Doc. 140 at 1.) Therefore, the Court need not consider the testimony of Ms. McIntyre or Mr. Rohrenbeck.

18

(quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). Defendants bear the burden to prove harmlessness. *Id.*

In her first set of interrogatories, Plaintiff asked for "the names, addresses, employers, and employment addresses of each lay witness that Huntington intends to call as witnesses [sic] at the trial." (Interrogatory 18, Doc. 122-2 at 7.) Defendants did not name any witnesses. (*Id.*) Plaintiff also sought the "name, address, and telephone number of each person likely to have discoverable information, along with the subjects of that information, that Huntington may use to support the defenses it alleged in its Answer to Plaintiff's Complaint." (Interrogatory 2, Doc. 122-2, at 3.) Defendants referred Plaintiff to its initial disclosures. (*Id.*) Defendants did not identify the undisclosed witnesses until several months after the close of the discovery deadline.

Defendants argue that the nondisclosure of each of these witnesses is harmless under Rule 37(c)(1) because: (a) *Plaintiff* identified Larissa Osborn and Deborah Siciliano in her initial disclosures (Doc. 140 at 3-4); (b) Plaintiff identified Dana Farthing as a witness in her deposition (*id.* at 4-5); (c) Rachel Mulchaey, Becky Spainhoward, Susan Wangler, Jason Gardner, and Tiffany Scurti-Swain were made known to Plaintiff in discovery (*id.* at 5-7, 8-10); (d) Plaintiff conducted extensive written discovery regarding all of the challenged witnesses (*id.* at 7-8); and (e) Deponents identified Rachel Mulchaey, Larissa Osborn, Becky Spainhoward, and Susan Wangler (*id.* at 9-10) Defendants also argue that the testimony of Deborah Siciliano, Larissa Osborn, Dana Farthing, Tiffany Scurti-Swain, and Jason Gardner is substantially justified under Rule 37(c)(1) because, according to Defendants, each is similarly situated to Plaintiff. (*Id.* at 10-11.)

Defendants' arguments that the nondisclosure was harmless are not well-taken. Plaintiff's interrogatory 18 was clear: identify all lay witnesses that Defendants intend to call at

trial. Defendants, well-aware of their duty to supplement their interrogatories, did so, omitting these eight witnesses. The fact that the names of these witnesses appeared buried within pages and pages of discovery and multiple depositions does not make this omission harmless. *Horn v. R.C. Hemm Glass Shops, Inc.*, No. 3:15-cv-423, 2017 WL 2779716, at *3 (S.D. Ohio June 26, 2017) ("the mere fact that Plaintiff was familiar with the names of these witnesses and the scope of their relevant knowledge is not enough. Neither is the fact that these individuals may have been referenced in documents produced in discovery. Until Defendant actually identified these individuals as **witnesses**, Plaintiff had little incentive to depose them or conduct written discovery. Accordingly, Defendant's failure to timely identify them as witnesses cannot be deemed harmless.") (emphasis added). While Oster may have known of the existence of these people and the substance of their knowledge, she did not know their status as witnesses until months after the discovery deadline. Therefore, the information at issue here (the *witness* status of the proposed witnesses) "ha[d] not otherwise been made known to the other parties during the discovery process or in writing" and Defendants breached their duties under Rule 26(e).

Even Defendants' strongest argument—that *Plaintiff* disclosed two of these witnesses in her own initial disclosures—fails. The 1993 commentary to Rule 37(c)(1), which suggests that "the failure to list as a trial witness a person so listed by another party" is harmless, does not change the analysis. Rule 26(a) disclosures concern people Plaintiff believes to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). They are not *trial witness* disclosures—those are addressed by Rule 26(a)(3). *Cf. Production Design Servs., Inc. v. Sutherland-Schultz, Ltd.*, 2015 WL 4945745, at *4 (S.D. Ohio Aug. 20, 2015) (declining to exclude defense witness who was listed as a plaintiff's trial witness).

In short, Defendants have failed to show "that their failure to comply with Rule 26(e) was an 'honest mistake' on their part and that the Plaintiff otherwise had 'sufficient knowledge' of the witnesses and information that they intended to present at trial." *Thomas v. McDowell*, No. 10-cv-152, 2014 WL 5305501, at *6 (S.D. Ohio Oct. 15, 2014) (excluding fact witnesses for failure to disclose them until three months after the close of discovery).

Likewise, Defendants have failed to show that their failure to identify these witnesses was substantially justified. Defendants argue that, because Plaintiff identified John Coburn and Mark Bjertness as similarly-situated to her in her opposition to Defendants' Motion for Summary Judgment, Defendants should be able to present the testimony of other individuals who were similarly-situated to Plaintiff at trial. (Doc. 140 at 10-11.) Plaintiff filed her opposition to Defendants' motion for summary judgment on January 20, 2017. (Doc. 84.) While the January 15, 2017 discovery cutoff had just passed (Doc. 36), Defendants waited until the eve of trial—by Plaintiff's account, June 27, 2017—to disclose these witnesses. (Doc. 122 at 2.) In January, Plaintiff could have acted. Now, Plaintiff cannot. The nondisclosure was not substantially justified.

Therefore, the Court **GRANTS** Plaintiff's motion to exclude Larissa Osborn, Deborah Siciliano, Rachel Mulchaey, Becky Spainhoward, Susan Wangler, Dana Farthing, Jason Gardner, and Tiffany Scurti-Swain as Defendants' trial witnesses. The Court will, however, permit these recently disclosed witnesses to be used on rebuttal for the limited purpose of impeachment. *See Thomas*, 2014 WL 5305501, at *6.

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: July 28, 2017**